STEWART, Respondent, v. HALVORSON et al, Appellants.

(211 N. W. 457.)

(File No. 5497.    Opinion filed December 31, 1926.)

1. **Taxation—Contract for Exchange of Property Held Not Subject to Payment of Mortgage Registry Tax (Laws 1919, c. 113, § 9).**

    Contract for exchange of property held not subject to mortgage registry tax, under Laws 1919, c. 113, § 9, so as to render it inadmissible in evidence for nonpayment of tax.

2. **Taxation—Party Who Pleaded Execution of Contract Held Estopped to Object to Admission Thereof on Ground of Nonpayment of Mortgage Registry Tax (Laws 1919, c. 113, § 9).**

    Party to contract for exchange of property could not object to admission of contract in evidence on ground that mortgage registry tax required, under Laws 1919, c. 113, § 9, had not been paid, thereon, where objecting party pleaded execution of contract and relied thereon in his pleadings.

3. **Exchange of Property—Evidence of Mutual Abandonment of Contract to Exchange Realty Held Insufficient to Raise Issue of Trading Back Crop Which Parties Treated as Exchanged.**

    Evidence, in action for conversion of corn crop under contract for exchange of real property, though indicating possible abandonment of contract through oral agreement, held insufficient to raise issue for jury as to whether landlord's share of crop on one parcel was traded back where parties to contract had treated exchange of landlord's share of crops as consummated.

**4. Trover and Conversion—Measure of Damages for Conversion of Unshelled Corn Held to Be Market Value of Shelled Corn Less Expense of Shelling and Hauling (Rev. Code 1919, § 1987, Subd. 1).**

In action for conversion of unshelled corn, value held to be market value of shelled corn less the necessary cost of shelling and hauling to market, in view of Rev. Code 1919, § 1987, subd. 1, fixing measure of damages as value at time of conversion.

Note.—See, Headnote **(1)**, American Key-Numbered Digest, Taxation, Key-No. 105½, Mortgages, 41 C. J. Sec. 423; **(2)** Taxation, Key-No.. 533, Appeal and error, 4 C. J. Sec. 2614; **(3)** Exchange of property, Key-No. 8(1), Trover and conversion, 38 Cyc. 2107; **(4)** Trover and conversion, Key-No. 48, 38 Cyc. 2094.

Appeal from Circuit Court, Minnehaha County; HON. L. L. FLEEGER, Judge.

Action by George D. Stewart against M. P. Halvorson and another. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Modified and affirmed.

*Parliman & Parliman,* of Sioux Falls, for Appellants. ·

*Krause & Krause,* of Dell Rapids, for Respondent.

CAMPBELL, J. August 31, 1921, defendants, as first parties, and plaintiff, as second party, executed and acknowledged in duplicate a certain written contract as follows:

"This agreement, made and entered into this 31st day of August, A. D. 1921, by and between Halvor Halvorson and M. P. Halvorson, parties ' of the first part, and George D. Stewart, party of the second part, witnesseth: that the said parties of the first part ,in consideration of the covenants and agreements of said party of the second part, hereinafter contained, hereby covenant with the said party of the second part that the said parties of the first part will convey by warranty deed to party of the second part the following described real estate:

"The south half (S. ½) of the northwest quarter (N. W. ¼) and the southwest quarter (S. W. ¼) of section 29, and north half (N. ½) of the northwest quarter (N. W. ¼) of section 32, all in township 106, range 52, Lake county, S. D., subject to a first mortgage of $32,000 and a second mortgage of $16,000 now of record, which second party is to assume and pay, together

with interest and taxes from March 1, 1921, and said party of the second part is to have the lease of said premises for the year 1921, with all rights of the parties of the first part in and to said lease.

"And the said party of the second part, in consideration of the said covenants on the part of the said first parties of the first part hereinbefore contained hereby agrees to and with the said parties of the first part that the said party of the second part will convey by warranty deed to parties of the first part the following described real estate:

"The northeast quarter (N. E. ¼) of section 21, township 105, range 48, Moody county, S. D., subject to mortgages of $13,500, due 1925, which said mortgages parties of the first part are to assume and pay. Parties of the first part also are to have the lease to said premises for the year 1921, together with all rights of the said second party therein, and as part of the consideration parties of the first part are to execute and deliver to party of the second part, or to himself and partner, a mortgage for $6,500, on said northeast quarter (N. E. ¼) of section 21, above described, which mortgage is to be subsequent to the mortgages hereinbefore referred to, and which mortgage is to be dated March 1, 1921, and draw interest from March 1, 1921, at the rate of 6 per cent per annum.

"And it is further agreed that the parties to this contract agree to deposit with Parliman & Parliman deeds to the above-described premises and the mortgage above described within 30 days from the date of this agreement, or as soon thereafter as the titles to said premises are perfected, should any defect be found therein.

"And it is further agreed that the said firm of Parliman & Parliman are to hold all of said papers until March 1, 1922, when same are to be delivered by said Parliman & Parliman to the parties entitled to same under this contract.

"It is further agreed that both parties are to give possession of said premises March 1, 1922: Provided, as above set forth, that each is to have the lease for the year 1921.

"It is provided further that party of the second part shall have the right to inspect the above property which parties of the first part agree to convey to him, and that, in case he shall not give them written notice on or before September 5, 1921, said

property is not satisfactory to him, then all of the covenants and agreements in this contract are to be of full force and effect, but if said second party does give such written notice to said first parties on or before September 5, 1921, then this agreement is to be null and void and of no effect.

"It is mutually agreed by and between the parties hereto that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators, and assigns of the respective parties."

Shortly thereafter, the defendants advised their tenant on the Lake County land that the landlord's share of the 1921 crop upon said land belonged to the plaintiff, and subsequently, at the direction of the plaintiff, this tenant shelled and marketed a portion of the landlord's share of the 1921 corn crop on said land, and remitted the proceeds thereof to plaintiff. Plaintiff made a lease on the Lake County land for the year 1922, and defendants in turn visited the Moody County land and entered into a contract whereby they leased the same to a tenant for the year 1922. In May, 1922, there remained on the Lake County farm about 700 bushels of the landlord's share of the 1921 corn crop raised on said premises, and the defendants caused said 700 bushels of corn to be shelled and marketed and the proceeds remitted to them.

In July, 1922, plaintiff instituted this action, alleging that he was the owner of said corn in May, 1922, located on said Lake County land, and that defendants converted the same to his damage. The complaint also alleged conversion by defendants of certain cash rentals, but as to this element of the case no proof was offered, and it appears to have been abandoned.

Defendants interposed their answer, pleading the execution of the contract hereinbefore set out and that the only interest plaintiff ever acquired in the corn in question was by virtue of said contract, and that said interest of plaintiff terminated prior to May, 1922, by reason of the fact that plaintiff had not performed said contract on his part, and by reason of the fact that subsequent to the execution of said contract and prior to May, 1922, it was mutually agreed between plaintiff and defendants that said contract should be canceled, abandoned, and rescinded, wherefore the defendants denied any conversion.

The case was duly brought on for trial before the court and a jury upon the issues so joined, and at the close of all the testimony the learned trial judge, upon plaintiff's motion, directed a verdict in favor of plaintiff and against defendants for the sum of $291.60, with interest and costs. Judgment was duly entered upon said directed verdict, from which judgment and from an order denying their application for new trial defendants appeal.

[1, 2] It is appellant's contention that the court erred in admitting in evidence the contract hereinbefore set out, for the reason that said contract was an instrument upon which mortgage registry tax was payable by virtue of the provisions of chapter 113, Session Laws of 1919 (which had not been repealed at the time of the trial), and that no mortgage registry tax had been paid thereon, and hence, under the provisions of section 9 of act last above cited, said instrument could not be "received in evidence in any action or proceeding." An examination of the contract in question shows clearly that it is not such an instrument as was subject to the payment of registry tax under the law cited. A further answer to this contention of appellants is that appellants themselves, in their answer, pleaded the making of this contract and set the same forth in ipsissimis verbis, and, having pleaded the execution of said instrument and relied thereon in their answer, are not in position to predicate error upon the admission of the same in evidence, even if the ruling of the court in that particular had been erroneous.

[3] Appellant's second contention is that the court erred in directing a verdict because there was evidence, sufficient, at least, to go to a jury, of a mutual abandonment and rescission of the written contract of August 31, 1921, by parol agreement in March, 1922, whereby any interest which respondent might have acquired in the corn in question by said written agreement revested in the appellants. Just what parol agreement, if any, was made in March, 1922, is not entirely clear from the evidence. Appellants claim that the written contract was then abandoned by mutual consent, while it seems to be the position of respondent that appellants, at that time, desired to cancel and rescind the written contract, and he refused. We have carefully read the entire evidence, as set forth in the original record, and believe that no good purpose would be served by setting it out in this opinion. It is to

be observed that, although the title deeds to the real estate in question were not to be exchanged until March, 1922, according to the written contract, yet the parties appear to have treated it as a contract in praæsenti so far as it relates to the exchange of the landlord's share of the 1921 crops on the respective lands. After the execution of the written contract, each party purported to lease to a tenant for 1922 the land for which deed was to be given in March, 1922, pursuant to the contract, and each party appears to have recognized the other as forthwith entitled to the landlord's share of the 1921 crop upon the lands which were to be exchanged, respectively, by deed on March 1, 1922. Taking the testimony of appellant's own witnesses and construing it most favorably to appellant, we believe that the most that can be said of the parol agreement, claimed to have been made in March, 1922, is that there may have been an agreement for the abandonment of further performance of the written contract from that period forward, that is, an abandonment of the exchange of deeds, assumption of mortgages, etc. We believe there is no evidence which would have justified the jury in finding that respondent in March, 1922, consented or agreed to any "trading back" of the landlord's share of the 1921 crops on the respective premises, the exchange of which had previously been treated between the parties as completed and consummated.

[4] Appellants further contend that, in any event, the amount of the judgment must be held erroneous. In this contention we think appellants are correct. The measure of damages was evidently fixed, and properly so, under subdivision 1, § 1987, R. C. 1919, at "the value of the property at the time of the conversion, with the interest from that time." It was stipulated that the market value of the corn in question in May, 1922, was $291.60. This is the amount for which the corn was sold, and from the entire record upon this point it is perfectly plain that the market value referred to in the stipulation is the market value, not upon the farm where the conversion took place and in the condition the corn then was, but at the place where and in the condition in which it was actually marketed. It appears, without dispute, in the record that, before the corn had this market value of $291.60, it had first to be shelled and hauled to the market, and that the reasonable and necessary expense of so doing

was $40.08. It is therefore clear that the value of the corn at the time and place of conversion and in its then condition, was $40.08 less than the stipulated market value. To this extent the judgment is erroneous.

The cause is therefore remanded, with instructions to reduce the amount of the judgment by deducting therefrom the sum of $40.08, with interest from the date of conversion, in conformity with this opinion, and, as so modified, the judgment and order appealed from will be affirmed. No costs will be taxed in this court.